FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 02, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARJORIE B., <br>     Plaintiff, <br> v. <br> COMMISSIONER OF SOCIAL SECURITY, <br>     Defendant. | NO. 4:17-CV-05104-SAB <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Plaintiff's Motion for Summary Judgment, ECF No. 12, and Defendant's Motion for Summary Judgment, ECF No. 20. The motions were heard without oral argument.

Plaintiff brings this action challenging the denial of disability benefits pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Court **grants** Defendant's Motion for Summary Judgment, ECF No. 20, and **denies** Plaintiff's Motion for Summary Judgment, ECF No. 12.

## ADMINISTRATIVE PROCEEDINGS

Plaintiff protectively filed an application for disability insurance benefits on January 29, 2013, alleging a disability onset date of December 31, 2012. AR 20.

The application was denied initially on August 9, 2013, and upon reconsideration on January 30, 2014. Thereafter, Plaintiff filed a written request for a hearing.

On August 26, 2015, a video hearing was held in Kennewick, Washington, with Administrative Law Judge ("ALJ") Cheri Filion presiding from Seattle, Washington. At the hearing, the ALJ found Plaintiff was capable of performing past relevant work as an office manager/administrative clerk. AR 32. Accordingly, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. AR 1.

Plaintiff timely filed the present action challenging the denial of disability benefits pursuant to 42 U.S.C. § 405(g).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner of Social Security has established a five-step sequential evaluation process for determining whether a claimant meets the definition of disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(4); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

At step one, the ALJ must determine whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as significant physical or mental activities done or

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 2**

usually done for profit. 20 C.F.R. § 404.1572. If the individual is engaged in substantial gainful activity, he or she is not disabled. 20 C.F.R. § 404.1571. If not, the ALJ proceeds to step two.

At step two, the ALJ must determine whether the claimant has a severe medically determinable impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe medically determinable impairment or combination of impairments, he or she is not disabled. *Id*. If the ALJ finds the claimant does have a severe impairment or combination of impairments, the ALJ proceeds to step three.

At step three, the ALJ must determine whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. If not, the ALJ proceeds to the fourth step.

Before considering step four, the ALJ must determine the claimant's "residual functional capacity." 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1545(a)(1). In making this finding, the ALJ must consider all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3).

At step four, the ALJ must determine whether the claimant's residual functioning capacity allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant can still perform past relevant work, he or she is

not disabled. If the ALJ finds the claimant cannot perform past relevant work, the analysis proceeds to the fifth and final step.

At step five, the burden shifts to the Commissioner to prove the claimant is able to perform other work in the national economy, taking into account claimant's age, education, work experience, and residual functioning capacity. 20 C.F.R. § 404.1520(g). To meet this burden, the Commissioner must establish (1) the claimant is capable of performing other work; and (2) such work exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 388-89 (9th Cir. 2012).

## STANDARD

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under Section 405(g) is limited, and the Commissioner's decision will be disturbed "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C § 405(g).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111.

Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 4

the [ALJ's] ultimate nondisability determination." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## STATEMENT OF FACTS

The facts of this case are set forth in detail in the transcript of the administrative proceedings and, therefore, are only briefly summarized here. Plaintiff was born on March 22, 1962. She obtained a B.S. degree in computer science and chemistry. AR 49. In December 2010, Plaintiff underwent a bilateral mastectomy subsequent to being diagnosed with breast cancer, and in August 2011, Plaintiff underwent a complete hysterectomy. AR 412. Plaintiff currently works part-time as a caregiver for DSHS. AR 59.

## ALJ'S FINDINGS

**At step one**, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 21, 2013, the alleged onset date. AR 22.

**At step two**, the ALJ found Plaintiff suffers from the following severe impairments: breast cancer in current remission, status post mastectomies and chemotherapy, lymphedema, and affective disorder (major depression). AR 22.

**At step three**, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404 Subpt. P. App. 1 (citing 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). AR 22.

Before reaching step four, the ALJ found Plaintiff has the residual functioning capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following exceptions: Plaintiff can frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; crawl occasionally; occasionally

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 5

reach bilaterally overhead; Plaintiff must avoid concentrated exposure to vibration and hazards; and could perform work involving semi-skilled tasks. AR 23-24.

**At step four**, the ALJ found Plaintiff is capable of performing past relevant work as an office manager/administrative clerk. AR 32. Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.

## ISSUES FOR REVIEW

1. Whether the ALJ erred in discounting medical opinion evidence?
2. Whether the ALJ erred at step two of the sequential evaluation process?
3. Whether the ALJ erred at step three of the sequential evaluation process?
4. Whether the ALJ erred in discounting Plaintiff's testimony?
5. Whether the ALJ erred in discounting lay witness testimony?
6. Whether the ALJ erred at steps four and five of the sequential evaluation process?

## DISCUSSION

**(1) The ALJ did not err in discounting medical opinion evidence.**

Plaintiff claims the ALJ improperly rejected the medical opinions of treating physicians Dr. Charles Krause and Dr. Kenneth Cole. "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). In the absence of a contrary opinion, a treating physician's opinion may not be rejected unless "clear and convincing" reasons are provided. *Lester*, 81 F.3d at 830. If a treating physician's opinion is contradicted, it may be discounted only for " 'specific and legitimate reasons' supported by substantial evidence in the record." *Id*. at 830-31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 6

### A. Dr. Krause

Treating physician Dr. Krause provided two medical opinions. On February 17, 2014, Dr. Krause completed a Physical Medical Source Statement (the "2014 opinion"). AR 877. Dr. Krause opined that Plaintiff would need a job that permits shifting positions at will from sitting to standing/walking, and that Plaintiff needs to take a five to ten minute unscheduled break every one to two hours throughout the day, due to pain, paresthesia/numbness and adverse effects of medication. AR 878. Dr. Krause further opined that Plaintiff has significant limitations in reaching, handling, and fingering, and that Plaintiff's symptoms are severe enough to interfere with Plaintiff's attention and concentration needed to perform simple work tasks 25% or more of the day. AR 879-80. Dr. Krause concluded by finding that if Plaintiff was trying to work full time, she would likely be absent more than four days per month as a result of her impairments or treatment, and that Plaintiff was incapable of tolerating even "low stress" work. AR. 880.

On August 7, 2015, Dr. Krause completed a Medical Report on behalf of Plaintiff (the "2015 opinion"). AR 1141. Dr. Krause opined that Plaintiff must lie down one to two times per day for thirty to sixty minutes; regular, continuous employment would cause her condition to deteriorate due to aggravation of her pain symptoms; she is limited to part-time sedentary work; and that she is limited to occasional handling and reaching on both upper extremities. AR 1141-45.

The ALJ gave little weight to Dr. Krause's opinions, finding (1) there were clear contradictions in his opinions when comparing his two assessments; (2) Dr. Krause attributed manipulative limitations to neuropathy, which is not a valid impairment supported by objective evidence; (3) Plaintiff's daily activities are inconsistent with Dr. Krause's 2015 opinion because she works as a caregiver doing tasks greater than sedentary level employment; (4) Dr. Krause's 2014

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 7

opinion is inconsistent with Plaintiff's allegations; and (5) Dr. Krause provided little explanations for either opinion. AR 30.

The Court finds the ALJ provided "specific and legitimate" reasons for discounting Dr. Krause's opinions. First, The ALJ discredited Dr. Krause's testimony, in part, because of the inconsistencies between his two opinions. An ALJ may reject inconsistent medical opinions from a treating physician. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In this case, the ALJ identified two inconsistencies between Dr. Krause's 2014 and 2015 opinions. First, the ALJ pointed out that in 2014, Dr. Krause opined that Plaintiff could lift up to twenty pounds occasionally, with the combined ability to walk, stand, and sit for eight hours in a work-day. AR 878-79. Then, in 2015, Dr. Krause opined that Plaintiff was limited to part-time sedentary work. AR 1144. Dr. Krause's 2015 opinion also stated that Plaintiff would need to lie down thirty to sixty minutes, one to two times a day. AR 1143. This limitation was not noted in Dr. Krause's 2014 opinion. These inconsistencies serve as a "specific and legitimate" reason for discounting Dr. Krause's opinion.

Second, The ALJ also discredited Dr. Krause's opinion because Dr. Krause attributed Plaintiff's manipulative limitations to neuropathy which, according to the ALJ, is not supported by objective medical evidence. An ALJ may discredit a treating physician's opinion if it is conclusory or unsubstantiated by relevant medical evidence. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

In this case, Dr. Krause opined that Plaintiff is significantly limited in her ability to hold things, AR 879, and is limited to the occasional use of her upper extremities. AR 1142. The ALJ discredited this opinion because there is no evidence that Plaintiff ever underwent an EMG to substantiate the existence of a nerve condition. AR 30. Plaintiff argues that the record establishes medical signs of neuropathy, with symptoms of weakness, numbness, and pain.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 8

While Plaintiff attempts to point at other evidence that supports her position, if the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably dawn from the record." *Molina*, 674 F.3d at 1111. There is nothing that would indicate the ALJ's interpretation of the record on this point is irrational. Thus, this also serves as a "specific and legitimate" reason for discounting Dr. Krause's opinion.

Third, the ALJ also discredited Dr. Krause's opinion for being inconsistent with Plaintiff's self-reported limitations. Inconsistency between a treating physician's opinion and a claimant's daily activities serves as a specific and legitimate reason for discounting a treating physician's opinion. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In this case, Dr. Krause's 2014 opinion indicates that Plaintiff has significant limitation walking, standing, and sitting, AR 878, and that this limitation has existed since December 2010. AR 880. On July 21, 2013, Plaintiff self-reported that she has no limitations walking, standing, or sitting. AR 864. This inconsistency also serves as a "specific and legitimate" reason to discredit Dr. Krause's medical opinion.

As indicated above, the ALJ offered several valid reasons for discounting Dr. Krause's medical opinions. The Court need not address whether the ALJ's remaining reasons satisfy the "specific and legitimate" standard, as any error would be harmless. *See Tommasetti*, 533 F.3d at 1038.

**B. Dr. Cole**

Treating physician Dr. Cole completed two mental functional capacity assessments, one on February 26, 2016, AR 891-912, and one on August 5, 2015. AR 1137-40.

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 9

Dr. Cole opined that Plaintiff has marked[1] limitations in her ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; make simple, work-related decisions; complete a normal work-day and work-week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods; and interact appropriately with the general public. AR 1137-38. Dr. Cole further opined that Plaintiff's mental listings result in marked limitations in her activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence or pace. AR 1139. Based on Plaintiff's cumulative limitations, Dr. Cole determined that Plaintiff is likely to be off-task over 30% of the time during a 40-hour work-week, and that Plaintiff is likely to miss four or more days per month. AR 1139.

The ALJ gave little weight to Dr. Cole's opinion, finding (1) Dr. Cole gave inconsistent opinions in multiple areas, and did not explain these discrepancies; (2) Plaintiff's daily activities contradicted Dr. Cole's opinion as to Plaintiff's limitations; (3) Dr. Cole's opinion that Plaintiff has had four or more episodes of decompensation is not supported by the record; (4) there was no testing performed or other similar information to support the many severe mental limitations identified by Dr. Cole; and (5) Dr. Cole's treatment notes failed to provide adequate support for his findings. AR 30.

The Court finds the ALJ provided "specific and legitimate" reasons for discounting Dr. Cole's opinion.

---

[1] Marked limitations are defined as very significant interference with basic work-related activities i.e., unable to perform the described mental activity for more than 33% of the work-day. AR 1137.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 10

First, as indicated above, an ALJ may reject inconsistent medical opinions from a treating physician. *Tommasetti*, 533 F.3d at 1041. In this case, Dr. Cole initially opined that Plaintiff had moderate limitations in her activities of daily living and concentration related functioning. AR 901. Dr. Cole later opined that Plaintiff had marked limitations in these same areas. AR 1139. Additionally, Dr. Cole's opinions also differed as to Plaintiff's ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to work in coordination with or proximity to others without being distracted by them; ability to make simple, work-related decisions; and ability to complete a normal work-day and work-week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 905, 1137-38. These discrepancies are not explained in Dr. Cole's reports.

The ALJ identified unexplained, inconsistent opinions in Dr. Cole's reports, and determined these inconsistencies rendered Dr. Cole's opinions unreliable. While Plaintiff disagrees with the ALJ's characterization of Dr. Cole's opinions, the Court may not substitute its judgment for that of the ALJ. *Matney*, 981 F.2d at 1019. Thus, this reason is sufficient to affirm the ALJ's adverse credibility determination of Dr. Cole.

Second, an ALJ may discredit a treating physician's opinion if it is contradicted by the claimant's daily activities. *Morgan*, 169 F.3d at 600-02. In this case, the ALJ noted that Dr. Cole found marked limitations in Plaintiff's ability to concentrate for extended periods of time, AR 1137, yet Plaintiff had been working up to four hours in a work-day, AR 59-60, read for enjoyment, AR 269, did crossword puzzles, AR 269, and drives a truck, AR 268.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 11

Dr. Cole also found Plaintiff had marked limitations with goals and planning, AR 1138, yet Plaintiff had the freedom to choose her clients and work hours, AR 59. Dr. Cole also found multiple social limitations, AR 1138, yet Plaintiff never reported social problems and worked as a caregiver, which involves substantial social interaction with clients. Plaintiff also reported that she maintained contact with friend from a church, which she attends on a regular basis. AR 850.

This reason also satisfies the "specific and legitimate" standard. An ALJ can satisfy the "specific and legitimate" standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 750. The ALJ did so here. The ALJ summarized Plaintiff's daily activities; cited to specific findings in Dr. Cole's opinions; and determined that they were inconsistent with one another. As such, this reason is also sufficient to affirm the ALJ's adverse credibility determination of Dr. Cole.

As indicated above, the ALJ offered several valid reasons for discounting Dr. Cole's medical opinions. The Court need not address whether the ALJ's remaining reasons satisfy the "specific and legitimate" standard, as any error would be harmless. *See Tommasetti*, 533 F.3d at 1038.

**(2) The ALJ did not err at step two.**

The second issue for review is whether the ALJ improperly rejected Plaintiff's alleged severe limitations at step two of the sequential process. At step two, the ALJ is required to determine whether an individual has one or more severe medically determinable impairments. 20 C.F.R. § 404.1520(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 12

A "severe" impairment, or combination of impairments, is defined as one that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.' " *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The claimant has the burden of proving his "impairments or their symptoms affect his ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).

In this case, the ALJ found Plaintiff suffers from the following severe impairments: breast cancer in current remission, status post mastectomies and chemotherapy, lymphedema, and affective disorder (major depression). AR 22. Plaintiff argues the ALJ committed error by failing to consider Plaintiff's other severe impairments, which include: anxiety; neuropathy of chest, back, and arms; chronic respiratory issues; fractured rib; esophagitis; migraines/headaches; arthritis of the knee with bone spurs; insomnia; irritable bowel syndrome; endometrial hyperplasia; and pelvic pain.

Even if the ALJ failed to identify these alleged impairments as severe medically determinable impairments at step two, such an error would be harmless. Step two of the sequential analysis is "merely a threshold determination meant to screen out weak claims." *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987). "It is not meant to identify the impairments that should be taken into account when determining the [Residual Functional Capacity]." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). When assessing a claimant's Residual Functional Capacity, an ALJ will consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." *Id*. Since step two was

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 13

decided in Plaintiff's favor, and the ALJ continued through the sequential process, any alleged error at this step is harmless.

**(3) The ALJ did not err at step three.**

Plaintiff argues that had the ALJ considered Dr. Cole's opinion, the ALJ would have found Plaintiff disabled at step three. However, as indicated above, the ALJ provided sufficient reasons for discounting Dr. Cole's opinion. As such, the ALJ did not err at step three.

**(4) The ALJ did not err in discounting Plaintiff's testimony.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). In this analysis, the claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of that symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.*

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons to do so." *Id.* at 1281.

In this case, the ALJ found Plaintiff satisfied the first step of the analysis. AR 25. Nonetheless, the ALJ discounted Plaintiff's subjective symptom claims for the following reasons.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 14

First, the ALJ found Plaintiff's self-reports have not always been consistent. AR 25. "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct," when evaluating a Plaintiff's subjective complaints. *Molina*, 674 F.3d at 1112. In this case, the ALJ found that in February 2013, Plaintiff indicated that she could lift less than 10 pounds, AR 270, then in December 2013, Plaintiff reported that she could lift less than 20 pounds, AR 294. Additionally, Plaintiff testified that she would need to change positions when sitting, AR 68, but denied any problems with sitting in her functional report. AR 294. Plaintiff also reported issues with balance, yet was able to walk at least a mile a day, and two to four miles on a good day. AR 270. The ALJ discounted Plaintiff's subjective symptom claims based on these inconsistencies.

The ALJ's first reason satisfies the "specific, clear and convincing" standard. The ALJ identified several inconsistencies within Plaintiff's self-reported symptom claims that warrant an adverse credibility determination.

Second, the ALJ found Plaintiff's daily activities contradict her symptom claims. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A Plaintiff's daily activities may also support an ALJ's adverse credibility determination "if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

However, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 15**

with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

> [M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication. Recognizing that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations, we have held that [o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.

*Id.* (internal citations and quotations omitted).

In this case, the ALJ found Plaintiff's daily activities illustrate her capacity to work at the light exertional level, if not more. For example, Plaintiff worked as a caregiver for two clients, for up to twenty hours a week, and up to five days a week. AR 26. A care provider is a medium level job under the Dictionary of Occupational Titles (DOT). AR 26. And while Plaintiff's work mostly involved giving reminders, running errands, and other non-physically demanding tasks, the ALJ found Plaintiff's other work activities (housekeeping, bathing, dressing, shopping, carrying groceries) were more physically demanding and were consistent with the DOT's description. AR 26. The ALJ found that "it is not reasonable that [Plaintiff] would work as a caregiver or be paid to be a caregiver if she had minimal ability to fulfill the physical aspects of the role. . . It is unreasonable that she could fill this role throughout the period at issue but concurrently alleged that she herself has debilitating physical and mental limitations." AR 26.

Plaintiff argues that the modest activities cited by the ALJ do not show Plaintiff is capable of regular, continuous employment. And it is true; these activities do not show Plaintiff is capable of regular, continuous employment. But Plaintiff's daily activities do provide the ALJ with a reason to discredit the *severity* of Plaintiff's subjective symptom claims.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** - 16

Here, Plaintiff's daily activities as a part-time caregiver show that Plaintiff "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). While these activities are modified to accommodate Plaintiff's impairments, the ALJ uses these facts to discredit the severity of Plaintiff's symptom claims. Thus, the ALJ's second reason also satisfies the "specific, clear and convincing" standard.

Finally, the ALJ also discounted Plaintiff's symptom claims because the objective medical evidence did not support Plaintiff's alleged physical symptoms. AR 27. An ALJ must consider objective medical evidence when determining the intensity and persistence of a claimant's alleged symptoms. 20 C.F.R. § 416.929(c)(2). An ALJ will not reject a claimant's statements about the intensity and persistence of the pain "solely because the available medical evidence does not substantiate [a claimant's] statements." *Id*.; *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in [her] credibility analysis").

In this case, Plaintiff claimed that she suffers from severe neuropathic pain, yet a physical examination in July 2013 showed generally normal findings. AR 865-66. Plaintiff showed no difficulty sitting; she could get on and off the examination table without assistance; gait and overall coordination was normal; and she had mild left arm weakness. AR 865-66. In January 2014, an x-ray was taken of Plaintiff's chest, in response to her allegations of debilitating chest pain. AR 889. The results were negative with little changes since June 1, 2012. AR 889. Additionally, the ALJ noted that there is no objective evidence of neuropathy, such as an EMG study, to support allegations of severe neuropathic pain. AR 27.

This reason also satisfies the "specific, clear and convincing" standard for discrediting a Plaintiff's testimony. The ALJ cited to specific medical evidence

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 17

and made a finding that such evidence contradicted Plaintiff's allegations of chronic pain. As such, the ALJ did not err.

The Court need not address the ALJ's remaining reasons for discounting Plaintiff's testimony. *See Molina*, 674 F.3d at 1115 (holding that an ALJ's error is harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.).

**(5) The ALJ did not err in rejecting lay witness testimony.**

Plaintiff argues that the ALJ improperly rejected the testimony of Plaintiff's brother, Michael Schonhoff. Lay witness testimony, as to a claimant's symptoms or how an impairment affects Plaintiff's ability to work, is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ can reject the testimony of a lay witness only upon giving a reason germane to that witness. *Smolen*, 80 F.3d at 1288.

In this case, Mr. Schonhoff submitted a third party function report. AR 281-88. In his report, Mr. Schonhoff indicated that Plaintiff experiences constant pain in her arms and chest; is restricted in her ability to lift/push/move objects of any weight; and that she gets tired quickly and needs rest breaks often. AR 281. Mr. Schonhoff also reported that Plaintiff's symptoms negatively impact her ability to sleep, AR 282; engage in personal care, *Id*.; and complete house and yard work, AR 284.

The ALJ found Mr. Schonhoff's testimony was very similar to Plaintiff's symptom claims, and gave his statements some weight, but ultimately discounted Mr. Schonhoff's testimony for the same reasons the ALJ rejected Plaintiff's symptom claims. AR 31. As indicated above, the ALJ provided "specific, clear and convincing" reasons for discrediting Plaintiff's symptoms claims. Thus, the ALJ did not err in rejecting Mr. Schonhoff's testimony for the same reasons. *See*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 18

*Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [Plaintiff's] own subjective complaints, and because [lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness] testimony.")

**(6) The ALJ did not err at step four or five.**

Finally, Plaintiff argues that the ALJ erred at steps four and five by relying on the vocational expert's response to an incomplete hypothetical. "The vocational expert's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record." *Magallanes*, 881 F.2d at 756.

In response to the ALJ's hypothetical, the vocational expert found Plaintiff was capable of performing past relevant work as an office manager/administrative clerk. AR 72-73.

Plaintiff contends that the vocational expert's opinion is without evidentiary value because the hypothetical failed to account for the impairments set forth in the opinions of Dr. Krause and Dr. Cole. In other words, Plaintiff restates her argument that the ALJ improperly discounted medical opinion testimony.

The ALJ's hypothetical contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. Thus, the ALJ's reliance on the vocational expert's testimony was proper. *See Magallanes*, 881 F.2d at 756-57 (holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record).

//
//
//
//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ^ 19

# CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment, ECF No. 20, and denies Plaintiff's Motion for Summary Judgment, ECF No. 12.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, ECF No. 20, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

3. The decision of the Commissioner of Social Security is **affirmed**.

4. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **close the file**.

**DATED** this 2nd day of October 2018.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 20**